UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY FAIRBANKS, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 1:20-cv-02578-JRS-DLP ) |
| WILLIAM HYATTE, | ) ) |
| Respondent. | ) ) |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner Jeffrey Fairbanks was convicted of neglect of a dependent resulting in death. Mr. Fairbanks now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Fairbanks raises four grounds for relief: 1) an ex post facto violation, 2) prosecutorial misconduct, 3) a void for vagueness challenge to Indiana's neglect of a dependent statute, and 4) insufficient evidence. Because all of these grounds are either procedurally defaulted or meritless, Mr. Fairbanks's petition for a writ of habeas corpus is **denied** and a certificate of appealability will not issue.

**I.**
**Background**

The following facts are summarized from the Indiana Court of Appeals opinion in Mr. Fairbanks's direct appeal, *Fairbanks v. State*, 108 N.E.3d 357, 361-66 (Ind. Ct. App. 2018) *opinion aff'd in part, vacated in part*, 119 N.E.3d 564 (Ind. 2019) (in the record at dkt. 13-6); *see Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018) (presuming that "the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence"); 28 U.S.C. § 2254(e)(1).

### A. The Crime

Mr. Fairbanks's daughter Janna was born in February 2015. Janna's mother, Yolanda Rivera, had two older daughters from a previous relationship, A.G. and E. M. They all lived together in the Maison Gardens apartments in Indianapolis until they moved into a house nearby. Mr. Fairbanks, Yolanda, and Janna all slept in a king-size bed.

On May 28, 2015, Yolanda left home for work around 4:15 a.m. Mr. Fairbanks had an appointment that day, so the two older girls stayed home from school to watch Janna, but then Mr. Fairbanks's appointment was canceled. A.G. heard Janna crying like "a regular baby would cry" around 8:00 a.m., but then heard muffled crying around 11:00 a.m. when she went downstairs to watch television with her sister. She again heard muffled crying when she went back upstairs to use the bathroom around twenty minutes later.

A little while later, Mr. Fairbanks came downstairs looking for a trash bag. He went back upstairs and returned with Janna wrapped in a blanket with her eyes closed. Mr. Fairbanks said he was going for a ride, but he did not take Janna's car seat which remained in the house.

Yolanda had been calling Mr. Fairbanks throughout the day, but he never answered. She got off work at 1:30 p.m. and arrived home about twenty minutes after Mr. Fairbanks had left. She was alarmed because he had not taken the car seat, diapers, or milk for Janna. She continued to call Mr. Fairbanks, but he didn't answer.

Mr. Fairbanks returned home around 11:30 p.m. Yolanda and the girls went to the car. Yolanda asked Mr. Fairbanks where Janna was, and he said she was in the car. But all Yolanda saw was a box of black trash bags. He eventually said he had buried Janna in a cornfield, but he would not say where.

Yolanda called the police the next morning. The police questioned Mr. Fairbanks, who first denied knowing where Janna was. He eventually said that she was dead when he woke up and he panicked. He admitted dumping her body in a garbage dumpster at Maison Gardens apartments, but the dumpster had already been emptied by the time police searched it. Despite extensive searching of the landfills that might contain the contents of the dumpster, only Janna's blanket was ever found. Police continued to question Mr. Fairbanks, and he later admitted that he had placed a pillow over Janna's face to muffle her cries around 5:30 a.m. when he changed her diaper. He said he took the pillow right off and fed her.

Mr. Fairbanks then gave two interviews with local television stations, repeating his story that Janna was dead when he woke up and that he did not know if he had rolled over onto her in his sleep.

### B. The Trial

The State eventually charged Mr. Fairbanks with murder and Level 1 felony neglect of a dependent resulting in death. Before trial, the State filed a notice of intent to introduce statements from A.G. and E.M. that Mr. Fairbanks had placed a pillow over Janna's face on at least two prior occasions. Mr. Fairbanks filed a motion in limine to prohibit the introduction of this evidence on the basis that it violated Indiana Evidence Rules 404(b) and 403. The State argued that Mr. Fairbanks's statements that he did not know how Janna died indicated that it was an accident, and that A.G. and E.M.'s statements rebutted the accident theory. The trial court denied the motion in limine.

At trial A.G. testified that she had seen Mr. Fairbanks put a pillow on Janna two or three times. She said Mr. Fairbanks put a pillow over Janna's head to stop her from crying, relax her, and put her to sleep. A.G. said that the crying she heard on May 28, 2015, was the same crying she

heard when Janna previously had a pillow over her face. E.M. also testified that she had previously seen a pillow on Janna's face on two occasions. Although defense counsel vigorously cross examined the girls on this testimony, counsel did not seek a limiting instruction.

> During closing argument, the State argued:
>
> Fairbanks is guilty of murder. He smothered Janna with a pillow. He caused her to suffocate and die. And so that means … the State of Indiana has met its burden. We have met [our] burden by proving Jeffrey Fairbanks knowingly killed Janna ….
>
> In reference to the neglect, we've proven that the defendant is Jeffrey. We've proven the fact that he is over 18 years of age. [We've] proven that he had the care and control of his own daughter, his own three-month-old baby.
>
> We've proven that Janna was a … dependent. She was less than 14 years of age, [she was] 3 1/2 months. He did place her in a situation that endangered her life. By placing a pillow over her head, it would be hard to say that that wasn't an unsafe environment. And then he went back to sleep, left her there. Left her like that.
>
> He left her unsupervised because he was sleepy, and it resulted in Janna's death. He just wanted to shut her up. Any parent … would know not to put a pillow over a … three-month-old baby's head.

*Fairbanks*, 108 N.E.3d 357, 365(quoting Tr. Trans., dkt. 15-8 at 31-32). Defense counsel argued:

> they have to prove that he knowingly killed the child. That's murder. Murder.
>
> He didn't murder this child. He loved this child. He didn't neglect this child, right?
>
> They charged unsafe or unsupervised, right? She wasn't unsupervised. He was in the bed.
>
> Now, they might get up and say well, … he'd sleep … through her. Well, okay. I find that interesting because if that's the case, if you could never go to sleep as a parent, right, for fear that you would unsupervise your child, then none of us would ever sleep; right?
>
> She was supervised. He was in the same room; right?
>
> Was it unsafe? People sleep with their kids all the time. This is accidental. It's an accident compounded by his stupidity of what he did with his own daughter (indicating). And … we have owned that; right? We told you we would own it.

> [....]
>
> Their theory of it's Jeffrey's fault because we don't have a body cuts both ways. Ladies and Gentlemen, they have not proven this case beyond all reasonable doubt. They haven't given you a reason to convict Mr. Fairbanks, and you must find him not guilty on both charges (indicating).

*Id*. at 365-66 (quoting Tr. Trans., dkt. 15-8 at 71-73). The jury found Mr. Fairbanks not guilty of murder but guilty of Level 1 felony neglect of a dependent resulting in death.

### C. The Direct Appeal

Mr. Fairbanks raised five issues on appeal:

1. The pillow evidence should not have been admitted under Indiana Evidence Rule 404(b);

2. Insufficient evidence;

3. Juror misconduct;

4. Prosecutor misconduct; and

5. The neglect of a dependent statute is unconstitutionally vague.

The Indiana Court of Appeals affirmed Mr. Fairbanks conviction, finding that:

1. He had affirmatively claimed that Janna's death was an accident and therefore the pillow evidence was admissible;

2. There was sufficient evidence to support the conviction;

3. He had waived his prosecutorial misconduct claims and could not overcome this procedural default by showing fundamental error;

4. He had waived his juror misconduct claim; and

5. The neglect of a dependent statute was not unconstitutionally vague.

He raised these issues in a petition to transfer to the Indiana Supreme Court. The Indiana Supreme Court granted transfer to address Mr. Fairbanks's Indiana Evidence Rule 404(b) argument. The Indiana Supreme Court held that lack-of-accident evidence may only be admitted when the State

has "reliable assurance" that an accident defense will be raised and that the State had such assurance based on Mr. Fairbanks's pretrial statements to police and news media. *Fairbanks v. State*, 119 N.E.3d 564, 569 (Ind. 2019) (in the record at dkt. 13-11), The court further held that admission of the pillow evidence was not unfairly prejudicial and summarily affirmed the Indiana Court of Appeals in all other aspects.

Mr. Fairbanks's petition for a writ of certiorari was denied by the Supreme Court on October 7, 2019. He has not sought state post-conviction relief.

He filed the instant petition for a writ of habeas corpus on October 5, 2020. Dkt. 1. Counsel amended the petition to raise four grounds for relief: 1) an ex post facto violation, 2) prosecutorial misconduct, 3) a void for vagueness challenge to Indiana's neglect of a dependent statute, and 4) insufficient evidence. Dkt. 11. The respondent filed a return to the Court's show cause order on January 11, 2021. Dkt. 13. Mr. Fairbanks has not replied and the time to do so has passed.

## II.
## Applicable Law

A federal court may grant habeas relief to a person in custody pursuant to the judgment of a state court only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Where a state court has adjudicated the merits of a petitioner's claim, a federal court cannot grant habeas relief unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson*

*v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103).

Section 2254(d) is not the only obstacle to habeas relief. A petitioner may procedurally default his claim by failing to fairly present it "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F. 3d 258, 268 (7th Cir. 2014).

Or a claim may be procedurally defaulted "if the relevant state court's disposition of the claim rests on a state law ground that is adequate and independent of the merits of the federal claim." *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021).

"A procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default, *or* he can establish that the denial of

relief will result in a miscarriage of justice." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (internal citations omitted).

### III.
### Discussion

#### A. Ex Post Facto Claim

Mr. Fairbanks argues that the Indiana Supreme Court violated the *Ex Post Facto* Clause when it allowed 404(b) evidence which he believes would not have been permitted under established precedent at the time of his trial. Dkt. 11-1 at 17. But the *Ex Post Facto* Clause does not apply to judicial decisions. *Rogers v. Tennessee*, 532 U.S. 451, 462 (2001) ("[It] has long been settled by the constitutional text and our own decisions: that the *Ex Post Facto* Clause does not apply to judicial decisionmaking.").

In support of his argument Mr. Fairbanks cites *Carmell v. Texas*, 529 U.S. 513 (2000), but that case was about a state statutory amendment—in other words, legislative rather than judicial action. He also cites *Bouie v. City of Columbia,* 378 U.S. 347 (1964), but *Rogers* made clear that language in *Bouie* regarding the *Ex post Facto* Clause and judicial decisionmaking was dicta. 532 U.S. at 458-59.

To the extent Mr. Fairbanks's claim can be understood as a due process claim, he did not raise such a claim before the Indiana Court of Appeals or the Indiana Supreme Court. "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts." *Lewis*, 390 F.3d at 1025. To meet this requirement, a petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025-26. Mr. Fairbanks's failure to raise a due process claim at any

stage of his state court proceedings renders this claim procedurally defaulted. Mr. Fairbanks argues that he could not have raised an *Ex Post Facto* claim until after the Indiana Supreme Court rendered its decision, but he could have argued that the trial court's application of 404(b) violated his due process rights in his direct appeal to the Indiana Court of Appeals and in his petition to transfer.

Mr. Fairbanks is not entitled to relief on this ground both because the *Ex Post Facto* Clause does not apply to judicial decisions and because his due process claim, to the extent he makes one, is procedurally defaulted.

### B. Prosecutorial Misconduct Claim

Mr. Fairbanks next argues that his due process rights were violated because the prosecutor discussed his failure to seek medical care for his daughter during closing argument. Dkt. 11-1 at 17-19. However, because Mr. Fairbanks did not object to the prosecutor's statements at trial, the Indiana Court of Appeals found the claim waived and reviewed it only under Indiana's version of the plain-error doctrine—that is, for fundamental error. *Fairbanks*, 108 N.E.3d at 370-72.

The Seventh Circuit has "repeatedly explained that where a state court reviews the claim for plain error as a result of a state procedural bar . . . , that limited review does not constitute a decision on the merits." *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (collecting cases); *see also Willis v. Aiken*, 8 F.3d 556, 567 (7th Cir. 1993) ("[T]he determination of the Indiana appellate court, that no fundamental error resulted from the instruction, rests on an independent and adequate state ground. We therefore hold that habeas review in the federal courts is . . . precluded."). The Indiana Court of Appeals's analysis of Mr. Fairbanks's claim under Indiana's fundamental-error doctrine constitutes an independent and adequate state law basis for its decision. Mr. Fairbanks's claim is therefore procedurally defaulted, and he is not entitled to federal habeas relief. *See Walker v. Martin*, 562 U.S. 307, 315 (2011).

### C. Void for Vagueness Claim

Mr. Fairbanks's third ground for relief is that Indiana's neglect of a dependent statute is unconstitutionally vague. Specifically, he challenges the following portion of the neglect of a dependent statute: "places the dependent in a situation that endangers the dependent's life or health." *See* Ind. Code § 35-46-1-4(a)(1) (2014). He argues that the statute is vague because it allowed the prosecutor to argue that sleeping while caring for a child is neglect. Dkt. 11-1 at 19-20.

A statute is unconstitutionally vague if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)). "Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) (citations omitted). So "'[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)). The Indiana Court of Appeals correctly recognized this standard. *Fairbanks*, 108 N.E.3d at 373-74.

The court then applied the standard to Mr. Fairbanks's case and held that the statute was not vague as applied to him because the prosecution did not argue that it is a crime for a parent to sleep. Instead, the prosecution argued that Mr. Fairbanks left his infant daughter in an unsafe environment—with a pillow over her head—and then went to sleep.

The Indiana Court of Appeals quoted the prosecutor's argument:

In reference to the neglect count, we have proven that the defendant placed Janna . . . in an unsafe environment. The unsafe environment is that at around eight o'clock in the morning, . . . we believe he placed a pillow over her head, and somewhere

10

> along the line, he went back to sleep. And he, in his own testimony . . ., he says he doesn't wake up until 1:30. So the child is not supervised for hours. Just because he's in the room—if he's asleep, he can't supervise.

*Id*. at 374 (quoting Tr. Trans., Dkt. 15-8 at 7–8). The court then held that the statute was not vague as applied to Mr. Fairbanks. Reasonable jurists could agree with the court that covering an infant's face with a pillow and then going to sleep is clearly proscribed by the neglect statute. Because the Indiana Court of Appeals reasonably applied federal law, Mr. Fairbanks is not entitled to habeas relief on this ground.

### D. Insufficient Evidence Claim

Mr. Fairbanks's final claim is that there was insufficient evidence to support his conviction. Evidence is constitutionally sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis original). "[H]abeas reviews of *Jackson* claims are subject to two levels of judicial deference creating a high bar: first, the state appellate court determines whether any rational trier of fact could have found the evidence sufficient; second, a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Saxon v. Lashbrook*, 873 F.3d 982, 987–88 (7th Cir. 2017). "Federal review of these claims . . . turns on whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson*'s 'no rational trier of fact' test." *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1999).

The Indiana Court of Appeals concluded in a footnote that sufficient evidence supported Mr. Fairbanks's conviction based on its conclusion that, although the pillow evidence was admissible, if it had been error to admit the pillow evidence such admission would be harmless

because substantial independent evidence supported Mr. Fairbanks's conviction. This conclusion was based on the following evidence that Mr. Fairbanks knowingly placed Janna in a situation that endangered her life:

> Fairbanks was alone with Janna in the bedroom from 4:15 a.m. to 1:30 p.m. Fairbanks admitted putting a pillow on Janna while he changed her diaper because she was crying. When Fairbanks briefly woke up A.G. around 8 a.m. to tell her that he would be home that day after all, A.G. heard Janna's regular cries. Fairbanks then went back to sleep (sharing a bed with Janna) and didn't wake up again until 1:30 p.m. When A.G. woke up for good around 11 a.m. (which is when Fairbanks claimed to have been sleeping), she heard Janna's muffled cries. About twenty minutes later, A.G. heard Janna's muffled cries again when she went upstairs to use the bathroom. When Fairbanks woke up at 1:30 p.m., Janna was limp and lifeless and her lips were blue. Fairbanks drove around with Janna's body for several hours and eventually discarded her body in a dumpster. Throughout the day, Fairbanks avoided Yolanda's phone calls, and when he finally returned home around 11:30 p.m., he told Yolanda and the girls that he had buried Janna's body in a cornfield (but he wouldn't tell them where). Notably, Fairbanks did not want police called that night and threatened Yolanda. When police came to their house the next morning, Fairbanks claimed that he didn't know where Janna was. And during the first part of his interview with police, Fairbanks continued to claim that he didn't know where Janna was. By the time Fairbanks directed police to the dumpster, it had been emptied, and Janna's body was never found. A reasonable inference from this evidence is that Fairbanks knowingly placed Janna in a situation that endangered her life or health, resulting in her death. Given this evidence, we are convinced that the jury would have reached the same result even if it had not learned about the prior pillow incidents.

*Fairbanks*, 108 N.E.3d at 370.

Although the Indiana Court of Appeals did not expressly state and apply the *Jackson* standard, it "engaged in reasoned, good-faith decisionmaking" when it determined that the jury would have convicted Mr. Fairbanks even without A.G. and E.M.'s pillow evidence. The Indiana Court of Appeals' analysis of this issue was reasonable, and Mr. Fairbanks is not entitled to relief. *Wilson*, 138 S. Ct. at 1191-92.

## IV.
## Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

For a claim resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim and about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Reasonable jurists would not disagree that Mr. Fairbanks's claims are either procedurally defaulted or meritless. Therefore, a certificate of appealability is **denied**.

## V.
## Conclusion

Mr. Fairbanks's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied** and a certificate of appealability shall not issue.

Final Judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 12/7/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov

David Lewarchik
LEWARCHIK LAW PLLC
dwl@appealcounsel.com

14